**Opinion filed July 23, 2026**



## In The

# Eleventh Court of Appeals

_____

## No. 11-25-00251-CV

_____

## ROXIE SUE SHORTER F/K/A ROXIE SUE WOLF, et al., Appellants

## V.

## COFFIELD FAMILY PROPERTIES, LTD., et al., Appellees

### On Appeal from the 132nd District Court
### Borden County, Texas
### Trial Court Cause No. 1412

### O P I N I O N

This case involves the interpretation of a 1944 deed conveying real property, while reserving "as a royalty interest an undivided one-half of the usual and customary one-eighth (1/8) royalty," and later clarifying that "the sole and only right of the grantors herein being to receive one-sixteenth (1/16)" as a royalty. This language raises "the now-ubiquitous 'double-fraction' deed construction issue."

*Boren Descendants & Royalty Owners v. Fasken Oil & Ranch, Ltd.* (*Boren I*), 703 S.W.3d 874, 881 (Tex. App.—Eastland 2024), *rev'd*, No. 25-0010, 2026 WL 1108688 (Tex. Apr. 24, 2026) (*Boren II*) (citing *Hysaw v. Dawkins*, 483 S.W.3d 1 (Tex. 2016)); *Van Dyke v. Navigator Group*, 668 S.W.3d 353 (Tex. 2023). Faced with competing motions for summary judgment, the trial court rendered summary judgment in favor of Appellees (the Coffields),[1] successors-in-interest to the grantors, concluding that the deed reserves a one-half floating royalty interest, rather than a fixed one-sixteenth interest.

Appellants (the Wolfs),[2] successors-in-interest to the grantees, appeal that conclusion, raising five issues, which we construe as the following two issues: the trial court (1) erred in granting the Coffields' motion for summary judgment and concluding that the deed reserved a one-half floating royalty interest; and (2) abused its discretion in admitting a stipulation resolving a disputed interest under the deed between the Wolfs and non-parties, and a landman's affidavit regarding ownership interests.

We affirm the trial court's judgment.

## I. *Factual and Procedural Background*

In April 1944, the Skeen family[3] conveyed to V.H. Wolf 640 acres of land in Borden County. The relevant language of the conveyance and reservation is as follows:

> *Grantors herein reserve unto themselves as a royalty interest an undivided one-half of the usual and customary one-eighth (1/8) royalty*

---

[1] Appellees are Coffield Family Properties, Ltd.; Kelly C. Perkins as Trustee of the Mary Elizabeth Coffield Trust and the Annette Coffield Trust; Margaret M. Collins; Matthew Cole Collins; Hill Farm Partners; Shawn Whipple Collins; Allen Shane Collins; James L. Collins, Jr.; Michael Chad Collins; Michele Carina Collins; and Skyler Ryan Collins.

[2] Appellants are Roxie Sue Shorter f/k/a Roxie Sue Wolf; Troyce Grant Wolf; Rhesa Lynn Lang f/k/a Rhesa Lynn Wolf; Jackie Dean Wolf, Jr.; and Stephen Craig Wolf.

[3] Bessie, V.L., Locia, W.B., H.R., S.E, Gene, J.W., and Adelene Skeen.

on all oil, gas and other minerals in, on and under the above described lands, *However, the grantee and his heirs and assigns shall have full and free rights to lease* said lands and execute oil and gas leases thereon for such consideration and on such terms and conditions as they may desire, *and grantee* and his heirs and assigns *shall be entitled to receive for his own use and benefit all bonuses and rentals* which may be paid for and under the terms of any such oil and gas leases, *the sole and only right of the grantors herein being to receive one-sixteenth (1/16) of all oil and gas and other minerals produced from said lands as a royalty interest* on any such production, and the joinder of grantors shall not be necessary to the validity of any oil and gas leases executed on said lands.

(Emphasis added). The Coffields filed suit against the Wolfs seeking a declaratory judgment that the reserved royalty was a floating interest rather than a fixed interest.[4] The parties filed cross-motions for summary judgment. In their motion for summary judgment, the Coffields argued that the deed unambiguously reserved a floating royalty, relying on *Van Dyke*. The Coffields maintained that the presence of a double fraction and the use of the term one-eighth and the language "usual and customary" triggers a presumption that the interest reserved is a percentage in the entire mineral estate. They asserted that there was no language in the deed to rebut this presumption. The Coffields attached to their motion a stipulation that the Wolfs had entered into with other successors-in-interest in which the parties stated that the deed reserved a floating interest. The Coffields also attached the declaration of landman Curtis D. Horne, who testified that the Coffields are successors-in-interest to the original grantors.

---

[4]"A fractional royalty interest is referred to as a fixed royalty because it 'remains constant' and is untethered to the royalty amount in a particular oil and gas lease." *U.S. Shale Energy II, LLC v. Laborde Props., L.P.*, 551 S.W.3d 148, 152 (Tex. 2018) (quoting *Hysaw*, 483 S.W.3d at 9). "A fraction of royalty interest is referred to as a floating royalty because it varies depending on the royalty in the oil and gas lease in effect and is calculated by multiplying the fraction in the royalty reservation by the royalty in the lease." *Id.*

In their motion for partial summary judgment, the Wolfs argued that following the double fraction, a later clause "expressing the non-participating royalty reservation, in a clause not conditioned by any double fraction, clearly describe[d] a fixed interest reservation." The Wolfs further explained that "[t]he only way to interpret the words 'sole and only right' in connection with an express fraction . . . is that it provides a fixed . . . royalty interest reservation." Alternatively, the Wolfs argued that the legacy and estate misconception issues did not exist in 1944, and therefore the *Van Dyke* presumption was inapplicable. The Wolfs objected to the Horne declaration and the stipulation. They argued that the declaration did not lay a proper foundation, attempted to interject parol evidence, violated the best evidence rule, was conclusory, and was irrelevant. They argued that the stipulation was inadmissible because it was entered into as part of a settlement, and it is irrelevant as well as parol evidence.

Following a hearing, the trial court entered a final judgment, overruling the Wolfs' evidentiary objections, denying its motion for partial summary judgment, granting the Coffields' motion for summary judgment as to their request for declaratory relief, and concluding that the deed reserved a floating royalty interest equal to one-half of the royalty in any lease for the production of minerals from the property. Specifically, the judgment states that:

> Accordingly, it is ORDERED, ADJUDGED, and FINALLY DECREED that the Warranty Deed recorded in Volume 41, Page 398 of the Deed Records of Borden County, Texas, attached to and incorporated in this Final Judgment, reserved to Grantors and their successors-in-interest a floating royalty interest equal to one-half of the royalty due and payable from the production of oil, gas, and other minerals in, on, and under all of Section 40, Block 25, H&TC Ry. Co. Survey, Borden County, Texas.

The Wolfs now appeal.

## II. *Floating or Fixed Interest?*

In their first issue, the Wolfs argue that the trial court erred in granting summary judgment in favor of the Coffields because the 1944 deed reserved a fixed, not a floating, royalty interest.

### A. *Standard of Review and Applicable Law*

We review the trial court's ruling on a summary judgment motion de novo. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). A party moving for traditional summary judgment bears the burden of proving that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c).[5] "Although a denial of a summary-judgment motion is generally not appealable, we may review the ruling when both parties have moved for summary judgment and the trial court grants one motion and denies the other." *Sur. Bonding Co. of Am. v. Auto. Acceptance Corp.*, 674 S.W.3d 580, 587 (Tex. App.—Houston [1st Dist.] 2023, no pet.) (citing *Tex. Mun. Power Agency v. Pub. Util. Comm'n of Tex.*, 253 S.W.3d 184, 192 (Tex. 2007)). In reviewing cross-motions for summary judgment, we review the evidence presented by each party, determine all issues presented, and render the judgment that the trial court should have rendered. *Id.* (citing *Tex. Mun. Power Agency*, 253 S.W.3d at 192). "If we determine that a fact issue precludes summary judgment for either party, we remand the cause for trial." *Id.* (citing *Univ. of Tex. Health Sci. Ctr. at Houston v. Big Train Carpet of El Campo, Inc.*, 739 S.W.2d 792, 792 (Tex. 1987)).

We similarly review a trial court's construction of a deed de novo. *See Piranha Partners v. Neuhoff*, 596 S.W.3d 740, 743 (Tex. 2020). "As with any deed

---

[5]We note that the Texas Supreme Court has recently revised Rule 166a. Although the "rewrite is not intended to substantively change the law," it has resulted in a renumbering of the provisions of the rule. *See* Final Approval of Amendments to Rule 166a of the Texas Rules of Civil Procedure, Misc. Docket No. 26-9012 (Tex. Feb. 27, 2026). The amendments to this rule only apply to motions for summary judgment filed on or after March 1, 2026. Because the cross-motions for summary judgment in this case were filed prior to that date, we refer to the rule in effect at the time the motions were filed. *See id.*

or contract, our task is to determine and enforce the parties' intent as expressed within the four corners of the written agreement." *Id.* (citing *Perryman v. Spartan Tex. Six Cap. Partners, Ltd.*, 546 S.W.3d 110, 117–18 (Tex. 2018)). "Intent must be determined by a careful and detailed examination of the document in its entirety, rather than by application of mechanical rules of construction that offer certainty at the expense of effectuating intent." *Hysaw*, 483 S.W.3d at 16. We utilize a holistic approach in ascertaining intent from the language of the deed. *Laborde*, 551 S.W.3d at 151; *see Clifton v. Johnson*, 733 S.W.3d 16, 21 (Tex. 2026) ("We look to all the language in such deeds to deduce intent.").

A royalty interest may be conveyed or reserved either as a fixed fraction of total production, called a fractional royalty interest, or as a fraction of the total royalty interest, called a fraction-of-royalty interest. *See Hysaw*, 483 S.W.3d at 9. A "double-fraction" issue "emerges when an instrument expresses a royalty interest as the product of two fractions, such as '1/2 of the usual 1/8.'" *Id.* When confronted with a double-fraction, in which the second stated fraction is 1/8, we must "*begin* [our analysis] with a presumption that the mere use of such a double fraction was purposeful and that 1/8 reflects the *entire* mineral estate" and conveys or reserves a floating royalty interest. *Van Dyke*, 668 S.W.3d at 364 (mineral interest conveyance and reservation); *see also Hysaw*, 483 S.W.3d at 4, 15–16 (conveyance by will of nonparticipating royalty interest).

This presumption arises for two reasons. First, due to "[t]he estate-misconception theory[,] the prevalent (but, as it turns out, mistaken) belief [was], in entering into an oil-and-gas lease, a lessor retained only a 1/8 interest in the minerals rather than the *entire* mineral estate in fee simple determinable with the possibility of reverter of the entire estate." *Van Dyke*, 668 S.W.3d at 363 (first citing *Hysaw*, 483 S.W.3d at 10; and then citing *Concord Oil Co. v. Pennzoil Expl. & Prod. Co.*, 966 S.W.2d 451, 460 (Tex. 1998)). Second, under the legacy theory, due to the near

6

ubiquitous nature of the 1/8 royalty, parties mistakenly assumed a landowner's royalty would always be 1/8. *Id.* They would use 1/8 "as a placeholder for future royalties *generally*—without anyone understanding that reference to set an arithmetical value." *Id.* The Texas Supreme Court has taken judicial notice of the misunderstanding, specifically in the context of double-fraction royalties. *Id.* (citing *Garrett v. Dils Co.*, 299 S.W.2d 904, 906 (Tex. 1957)).

The presumption, however, is "readily and genuinely rebuttable." *Id.* at 364. It can be rebutted by (1) express language, (2) distinct provisions that could not be harmonized if 1/8 is given the term-of-art usage, or (3) the repeated use of fractions other than 1/8 in ways that reflect that the arithmetical expression was meant to represent all fractions in the instrument. *Id.* at 364–65; *see also Thomson v. Hoffman*, 674 S.W.3d 927, 928 (Tex. 2023) (per curiam). Thus, the use of the term 1/8 in a double-fraction scenario is regarded as a term of art unless the text or structure of the instrument rebuts the presumption, thus requiring that 1/8 be given its arithmetical meaning instead. *Van Dyke*, 668 S.W.3d at 364–65.

B. *Analysis*

The Wolfs argue that the language in the express reservation of the deed shows a specific intent to reserve a fixed interest, rebutting the presumption of a floating interest. They posit that "[t]he weight of the bookmarks of 'However . . .' and 'the sole and only right . . .' counteracts the *Van Dyke* presumption" when followed by the single fraction 1/16. They alternatively argue that the *Van Dyke* presumption does not apply because the interest in question is expressed as a fraction of gross production which cannot be harmonized with a floating interest. The Wolfs further maintain that the legacy and estate misconception issues did not exist in 1944, so the presumption does not apply for that reason as well.

The Coffields respond that the *Van Dyke* presumption applies because the reservation clause in the deed contains a double fraction, in which the second

7

fraction is 1/8. Thus, they explain that "[t]he Grantors in the 1944 Deed therefore reserved 'an undivided one-half' interest in the *entire* royalty, and not a fixed one-sixteenth interest that would result from multiplying the two fractions together." The Coffields note that the estate misconception and legacy doctrines have been applied to instruments later than the 1944 deed. They also argue that nothing in the deed rebuts the presumption, and the single fraction clarifies what the floating royalty interest would be in the context of a lease for one-half of the usual and customary 1/8.

To aid our interpretation of the deed in this case, we divide its operative language into the following two parts:

(1) *the reservation clause*, whereby the grantors reserved:

as a royalty interest an undivided one-half of the usual and customary one-eighth (1/8) royalty on all oil, gas and other minerals in, on and under the above described lands[; and]

(2) *the future lease clause*, which clarifies:

However, the grantee and his heirs and assigns shall have full and free rights to lease said lands and execute oil and gas leases thereon for such consideration and on such terms and conditions as they may desire, and grantee and his heirs and assigns shall be entitled to receive for his own use and benefit all bonuses and rentals which may be paid for and under the terms of any such oil and gas leases, the sole and only right of the grantors herein being to receive one-sixteenth (1/16) of all oil and gas and other minerals produced from said lands as a royalty interest on any such production.

As we have said, when confronted with the interpretation of a deed that includes a double fraction in which the second stated fraction is 1/8, we must "*begin* [our analysis] with a presumption that the . . . use of such a double fraction was purposeful and that 1/8 reflects the *entire* mineral estate." *Id.* at 364. In construction of the conveyance document at issue, we note that the *Van Dyke* presumption is not limited to instruments that were executed prior to 1944. *See Laborde*, 551 S.W.3d at 150

(construing a deed executed in 1951); *Hysaw*, 483 S.W.3d at 5 (construing will executed in 1947); *KCM Fin. LLC v. Bradshaw*, 457 S.W.3d 70, 75 (Tex. 2015) (observing that the 1/8 royalty appears to have been commonplace in the era in which the 1960s deeds were executed).

The conveyance language in the reservation clause clearly implicates the *Van Dyke* presumption. It includes a double fraction, in which the second stated fraction is 1/8. *See Van Dyke*, 668 S.W.3d at 363–64. Accordingly, "one-half of the usual and customary one-eighth (1/8) royalty" is initially read as "one-half (1/2) of the standard royalty"—thereby reserving a 1/2 floating interest. *See Montgomery, Tr. of Tri-Mont Irrevocable Trusts v. ES3 Minerals, LLC*, 697 S.W.3d 397, 403 (Tex. App.—El Paso 2024, no pet.) ("The *Van Dyke* presumption, treating 1/8 as serving as a placeholder for future royalties generally, is a presumption of a floating royalty interest.").

Next, we must determine whether the text of the deed rebuts the presumption of a floating interest. Several recent Texas cases are instructive. In *Laborde*, the Texas Supreme Court was faced with a reservation clause that contained the following language:

> There is reserved and excepted from this conveyance unto the grantors herein, their heirs and assigns, an undivided one-half (1/2) interest in and to the Oil Royalty, Gas Royalty and Royalty in other Minerals in and under or that may be produced or mined from the above described premises, the same being equal to one-sixteenth (1/16) of the production.

551 S.W.3d at 150. In determining the rights reserved under this clause, the court noted that the structure of the reservation clause supported a finding that the second half of the clause was merely explanatory. *See id.* at 153–54. It further noted:

> "[T]he same being equal to one-sixteenth (1/16) of the production" is offset by a comma, indicating a nonrestrictive dependent clause. Such a clause "gives additional description or information that is incidental

9

to the central meaning of the sentence" and "that could be taken out of the sentence without changing its essential meaning."

*Id.* at 154 (quoting Bryan A. Garner, *The Redbook: A Manual on Legal Style* § 1.6(a), at 6 (3d ed. 2013)). The court addressed this structure after determining the first clause reserved a floating interest and "consistent with [its] rule of construction mandating that no language be rendered meaningless" this second clause could not modify the plain meaning of the first clause. *Id.* at 153. After analyzing the second clause, the court explained that "the sentence's grammatical structure is consistent with the interpretation that gives effect to all of its parts." *Id.* at 154.

In *Royalty Asset Holdings II, LP v. Bayswater Fund III-A LLC*, the Eighth Court of Appeals analyzed a deed that reserved an "undivided 1/4th of the land owner's usual 1/8th royalty interest (being a full 1/32nd royalty interest)." No. 08-22-00108-CV, 2023 WL 2533169, at *1 (Tex. App.—El Paso Mar. 15, 2023, pet. denied) (mem. op.). As in *Laborde*, the court determined that under grammatical rules, the single fraction parenthetical was a nonessential explanation of the double fraction it followed, which reserved a floating 1/4th royalty interest. *Id.* at *5.

In *Clifton*, the Texas Supreme Court analyzed a deed where the primary clause conveyed "'an undivided one-one hundred and twenty-eighth (1/128) interest in and to all of the oil, gas and other minerals in and under' described tracts of land in Reeves County." 733 S.W.3d at 20. The deed then provided that:

It is understood and herein stipulated that said land is under oil and gas leases providing for a royalty of 1/8 of the oil and certain royalties or rentals for gas and other minerals and that Grantees herein shall received [sic] one-sixteenth (1/16) of the royalties provided for in said lease insofar as the same cover the above described land, but Grantees shall have no interest in or be entitled to nor be entitled to receive any part of any rentals paid under said leases, nor shall the Grantees have any interest in any bonus money received by the Grantors, their heirs or assigns, in any future lease or leases given on said land or any part thereof, and it shall not be necessary for the Grantees to join any such

10

subsequent lease or leases so made; that Grantees shall only receive under such subsequent lease or leases a 1/128 (1/16 of the usual 1/8 royalty) part of all of the oil, gas and other minerals taken and saved under such lease or leases and Grantees shall receive same out of the royalty provided for in such lease or leases.

*Id.* The court explained that "the deed's language amply contains the kind of textual indicia we described as sufficient to rebut [the] presumption [of a floating royalty interest]." *Id.* at 22. It reasoned:

> The deed . . . contains language in both the granting clause and the future-lease clause that expressly uses "1/128"—the product of two fractions. In the granting clause, 1/128 stands alone, without an attached double fraction. But in the future-lease clause, 1/128 is followed by a parenthetical containing two fractions (1/16 and 1/8) that, multiplied together, produce 1/128. The deed thus uses the double fraction to show its work.

*Id.* The court continued, "[t]he explanatory parenthetical should not be given greater weight than the single-fraction product, especially because the same figure is expressed alone in the granting clause." *Id.* at 23. It explained, "The operative terms in the deed in this case, however, clearly establish a 'textually demonstrable basis to rebut the presumption,' so we hold that the deed conveys a 1/128 future-royalty interest." *Id.* (quoting *Van Dyke*, 668 S.W.3d at 365).

Most recently, in *Hoffman v. Thomson*, the Fourth Court of Appeals interpreted the following use of a double fraction in the reservation clause: "[T]here is hereby expressly reserved . . . an undivided three thirty-second's (3/32's) interest (same being three-fourths (3/4's) of the usual one-eighth (1/8th) royalty) in and to all of the oil, gas and other minerals[.]" No. 04-19-00771-CV, 2026 WL 758737, at *7 (Tex. App.—San Antonio Mar. 18, 2026, no pet. h.). This was followed by the following clarifying language:

> Hoffman . . . shall receive a full three thirty-second's (3/32's) portion thereof as his own property[.]

11

> Hoffman, shall own and be entitled to receive three thirty-second's (3/32's) of the gross production of all oil, gas and other minerals produced and saved[.]

*Id.* at *8. The court concluded that "the use of the fraction 3/32, followed by an explanatory parenthetical with a double fraction, does not rebut the *Van Dyke* presumption." *Id.* at *10. It explained, "While the fraction 3/32 is repeated two more times (without the parenthetical), we do not find that these instances could rebut the presumption either, absent a determination that the parenthetical in the first clause is simple math—something we have already concluded is not possible." *Id.*

In the present matter, we first observe that the phrase "one-half of the usual 1/8 royalty" is indicative of a floating royalty. *See Boren*, 703 S.W.3d at 885 (noting that we have previously held that double-fraction language that describes "the usual 1/8 royalty" can, under appropriate circumstances, create a floating interest, and seeing no reason why such language could not be similarly applied in the case, particularly in light of the supreme court's holding in *Van Dyke*); *Montgomery*, 697 S.W.3d at 404–05 (recognizing that "the usual 1/8 royalty" can stand as a proxy for the landowner's royalty and supports the presumption of an intended floating interest); *Royalty Asset Holdings*, 2023 WL 2533169, at *4 ("[T]he specific reference to the landowner's royalty and the use of 'the usual 1/8th royalty' guide us to a determination this language supports and does not rebut the presumption the deed reserved a floating 1/4th interest."); *Butler v. Horton*, 447 S.W.3d 514, 519 (Tex. App.—Eastland 2014, no pet.) (holding a floating royalty was created when grantor reserved "one-half of the usual 1/8th royalty"); *Sundance Minerals, L.P. v. Moore*, 354 S.W.3d 507, 510, 512 (Tex. App.—Fort Worth 2011, pet. denied) (deed describing the reservation as "one half of the usual one eighth royalty" reserved 1/2 of royalties, not fixed 1/16 royalty).

More importantly, the deed presents the inverse scenario of the language analyzed in *Clifton* where the presumption was rebutted, in that the use of the double fraction occurs in the primary reservation clause, and, only later, in the future-lease clause, does the deed contain the "one-sixteenth (1/16)" language. 733 S.W.3d at 23. Given this structure, we will not give greater weight to the use of single fraction product in the future-lease clause than the use of the double fraction in the primary reservation clause.

Having determined that the first clause reserves a floating interest and "consistent with our rule of construction mandating that no language be rendered meaningless," we conclude that the future lease clause does not modify the plain meaning of the first clause. *See Laborde*, 551 S.W.3d at 153. Accordingly, we hold that the deed reserved a floating 1/2 royalty interest. *See Bridges v. Uhl*, 663 S.W.3d 252, 262–63, 265 (Tex. App.—El Paso 2022, no pet.) (reaching the same conclusion regarding a 1940 deed reserving "an undivided one half (1/2) of the usual one-eighth (1/8) royalty" which later clarified "if, as and when production is obtained, grantor . . . shall receive one-half (1/2) of the usual one-eighth (1/8) royalty, or one-sixteenth (1/16) of the total production"). Therefore, the trial court did not err in granting summary judgment on this basis. *See Dorsett*, 164 S.W.3d at 661. We overrule the Wolfs' first issue.

### III. *Evidentiary Rulings*

In their second issue, the Wolfs argue that the trial court committed two harmful evidentiary errors. First, the Wolfs argue that the trial court erred in admitting a stipulation between the Wolfs and non-parties to the litigation because it constituted an inadmissible settlement agreement and was irrelevant to a de novo construction of the deed. Second, the Wolfs argue that the trial court erred in

13

admitting Horne's affidavit because his testimony regarding the interest of each Coffield party contained no evidentiary support and "amounts to *ipse dixit*."

If the trial court abused its discretion when it ruled on an objection to summary judgment evidence, we must determine whether the ruling probably resulted in the rendition of an improper judgment. *City of Stephenville v. Belew*, 692 S.W.3d 347, 361 (Tex. App.—Eastland 2024, pet. denied) (first citing TEX. R. APP. P. 44.1(a)(1); and then citing *Gunn v. McCoy*, 554 S.W.3d 645, 668 (Tex. 2018)). Our decision today does not rely on the complained-of evidence. Rather, our disposition turns on the unambiguous language of the deed, which we review de novo. *See Neuhoff*, 596 S.W.3d at 743. Therefore, we conclude that any alleged evidentiary error was harmless. *See Belew*, 692 S.W.3d at 361. We overrule the Wolfs' second issue.

## IV. *Presumed Grant*

Although raised before the trial court but not properly raised or briefed on appeal, we note the role that the presumed-grant doctrine plays in conjunction with the construction of conveyance documents that use double fractions, as in this case. Unlike the double-fraction presumption, "the presumed-grant doctrine is concerned not with textual meaning but with real-world developments. That doctrine, 'also referred to as title by circumstantial evidence, has been described as a common law form of adverse possession.'" *Clifton*, 733 S.W.3d at 24 (quoting *Van Dyke*, 668 S.W.3d at 366). "The doctrine requires its proponent to establish three elements: (1) a long-asserted and open claim, adverse to that of the apparent owner; (2) nonclaim by the apparent owner; and (3) acquiescence by the apparent owner in the adverse claim." *Van Dyke*, 668 S.W.3d at 366 (citing *Magee v. Paul*, 221 S.W. 254, 257 (Tex. 1920)). "In cases where the presumed-grant doctrine is clearly implicated, a court could dispense with the deed-construction analysis." *Id.* at 368 n.11.

14

Since *Van Dyke*, presumed grant has been an emerging doctrine in Texas oil and gas litigation, and recently, in *Clifton* and *Boren II*, the Texas Supreme Court has shone a spotlight on the issue, signaling the need for appellate courts to fairly apply the doctrine in the various case contours that have and will inevitably follow. "*Clifton* clarified . . . the need for courts to consider both the relevant instrument's text and, *if properly raised*, the presumed-grant doctrine." *Boren II*, 2026 WL 1108688, at *3 (emphasis added).

In *Van Dyke*, the court concluded that a presumed grant was conclusively established based on "a long and asserted open claim—for nearly a century, [where] *both* parties acted in accordance with *each* side owning a 1/2 interest." 668 S.W.3d at 367. In *Clifton*, the parties had "seven decades of shared understanding." 733 S.W.3d at 24. In both cases, such evidence was consistent with the construction of the relevant instrument. *See id.* ("Both here and in *Van Dyke*, these two distinct inquiries generate consistent answers."). Finally, in *Boren II*, in determining that this court had jurisdiction to address the application of the presumed-grant doctrine in the permissive appeal context, the Texas Supreme Court noted:

> The orders on appeal in this case included the grant of Fasken's no-evidence summary-judgment motion rejecting the presumed-grant doctrine. One of the controlling issues of law was whether an affirmative defense barred the plaintiffs from asserting that their interest is anything other than a fixed 1/32nd. The presumed-grant doctrine, if it applies, would establish that Fasken holds a fixed 1/32 royalty interest. Closing our eyes to the doctrine—giving the parties half a loaf—would be inefficient and would thwart the prudential and salutary purpose of the power the Legislature has granted by allowing permissive appeals.

*Boren II*, 2026 WL 1108688, at *2 (internal quotation marks omitted).

Here, the Coffields did not move for summary judgment based on the presumed-grant doctrine. However, they attached as summary judgment evidence a stipulation between the Wolfs and non-parties to this litigation, in which the Wolfs

15

stipulated that the 1944 deed reserved a floating royalty interest.[6]  In their response to the Coffields' motion for summary judgment, a full two years after *Van Dyke* was decided, the Wolfs urged in the alternative to their deed construction argument that there was a fact issue regarding their presumed-grant affirmative defense.  They did not reference the stipulation, other than to object to its admissibility.  And rather than show a decades long shared understanding of the interest as in *Van Dyke* and *Clifton*, the Wolfs attached 1995 oil and gas leases that provided for a 3/16 royalty interest and asserted that "[t]he Borden County Appraisal District then at least for 1997, the only year available, rendered the interests on the tax roll on a fixed royalty interest basis."  In their reply, the Coffields responded that the Wolfs "say that the royalties reflected on the appraisal roll are consistent with a 'fixed' royalty, but nothing in the document itself supports this contention nor have [the Wolfs] explained how the record supports its argument."  However, repeating the Texas Supreme Court's instruction, we are to consider the presumed-grant doctrine only if it is properly raised.  *See Boren II*, 2026 WL 1108688, at *3.  Here, we are not presented with any of the scenarios spotlighted by the Texas Supreme Court that would allow us to sua sponte address the presumed-grant doctrine.

Importantly, the Wolfs do not complain on appeal about the trial court's implicit conclusion that the Wolfs failed to raise a genuine issue of material fact on each element of their presumed-grant affirmative defense.  "When the trial court does not specify the grounds for its ruling, a summary judgment must be affirmed if any of the grounds on which judgment is sought are meritorious." *Merriman v. XTO Energy, Inc.*, 407 S.W.3d 244, 248 (Tex. 2013).  A party appealing such a judgment

> must negate all possible grounds upon which the order could have been
> granted by either asserting a separate issue challenging each possible

---

[6]Had the parties presented the presumed grant doctrine for our consideration, without more, the Wolfs' stipulation that the 1944 deed reserves a floating royalty interest would "lead [us] to the same result as our reading of the deed." *Clifton*, 733 S.W.3d at 25.

ground, or asserting in a general issue that the trial court erred in granting summary judgment and providing argument negating all possible grounds upon which summary judgment could have been granted.

*Rodriguez v. Lockhart Contracting Servs., Inc.*, 499 S.W.3d 48, 62–63 (Tex. App.—San Antonio 2016, no pet.). Accordingly, the Wolf's failure to complain as to the trial court's implicit findings with regard to presumed grant supports affirmation of the trial court's judgment.

## V. *This Court's Ruling*

We affirm the trial court's judgment.

W. BRUCE WILLIAMS

JUSTICE

July 23, 2026

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.